UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANGIE SINGLETARY, individually and on behalf of other members of the general public similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>TEAVANA CORPORATION,<br><br>    Defendant. | Case No. 5:13-cv-01163-PSG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 30)** |

    Plaintiff Angie Singletary brings five claims against her former employer, Teavana Corporation, for violations of the rest break and suitable seating provisions of the California Labor Code. This court has jurisdiction over this matter under 28 U.S.C. § 1332(a) because Singletary's claims place in controversy an amount exceeding $75,000, exclusive of interest and costs, and the opposing parties are of diverse citizenships. The court also has jurisdiction over this matter under 28 U.S.C. § 1332(d) because it is a putative class action involving more than 100 individuals, at least one of whom is a citizen of a state other than Teavana, and it places in controversy a total amount exceeding $5,000,000, exclusive of interest and costs. Venue is proper in this court

1

because this action was removed from the Santa Clara County Superior Court of California, which is a state court within this federal district.[1]

Teavana moves for summary judgment as to four of Singletary's claims: failure to provide suitable seating, failure to pay wages upon termination, violations of California's Unfair Competition Law, and penalties under the California Private Attorney General Act, as well as her prayer for injunctive relief.[2] Having considered the papers and arguments of counsel, the court GRANTS Teavana's motion.

## I. BACKGROUND

The essential facts of this dispute are not terribly complicated. Teavana is a chain of retail stores that sell tea and tea accessories, and Singletary was hired as a sales associate in their San Jose store. Singletary's job was to guide customers through the "Teavana Journey," including providing tea samples, demonstrating the teapots and accessories and selling the tea itself. When she was with customers, her job "required constant movement throughout the store."[3] When she was not with a customer, she was required to be at the sample cart in front of the store to lure in prospective customers; this task also required her to stand, so she could actively engage with passersby.[4] The store did not have a place for employees to sit while out on the sales floor, but there was a stool in the back room, benches five steps from the entrance to the store, and a seating area with couches just a few yards down the hall.[5]

---

[1] *See* 28 U.S.C. § 1441(a).

[2] *See* Docket No. 30.

[3] *See* Docket No. 30-2 at 105:3-9.

[4] *See id.* at 128-129.

[5] *See* Docket No. 30 at 3; Docket No. 30-2 at 79:21-80:15.

2
Case No. 5:13-cv-01163-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## II.  LEGAL STANDARDS

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] There are two distinct steps to a motion for summary judgment.  The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[7]  Where the moving party has the burden of proof at trial, he must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."[8]  If the moving party does not bear the burden of proof at trial, however, he may satisfy his burden of proof either by proffering "affirmative evidence negating an element of the non-moving party's claim," or by showing the non-moving party has insufficient evidence to establish an "essential element of the non-moving party's claim."[9]  If the moving party meets its initial burden, the burden of production then shifts to the non-moving party, who must then provide specific facts showing a genuine issue of material fact for trial.[10]  A material fact is one that might affect the outcome of the suit under the governing law.[11]  A dispute is "genuine" if the evidence is such that reasonable minds could differ and find for either party.[12]

At this stage, the court does not weigh conflicting evidence or make credibility determinations.[13]  Thus, in reviewing the record, the court must construe the evidence and the

---

[6] Fed. R. Civ. P. 56(a).

[7] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8] *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).

[9] *Celotex*, 477 U.S. at 331.

[10] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[11] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[12] *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987).

[13] *T.W. Elec. Serv.,* 809 F.2d at 630.

inferences to be drawn from the underlying evidence in the light most favorable to the non-moving party.[14]

### III.   DISCUSSION

**A.   Singletary's Testimony Precludes Her Suitable Seating Claim**

Labor Code Section 1198 establishes that "the standard conditions of labor fixed by the [industrial wage] commission shall be . . . the standard conditions of labor for employees." The parties agree that IWC's Wage Order 7 sets the "standard conditions of labor" for retail stores, and Section 14(B) of that order provides that "[w]hen employees are not engaged in the active duties of their employment . . . an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties."[15]

At the hearing on this motion, Singletary's counsel suggested that there is a factual dispute as to whether Singletary was ever "not engaged in the active duties of her employment," such that she would have had an opportunity to sit if seats had been provided. But this suggestion is not supported by the record. Critically, at her deposition, Singletary conceded that she could not work with customers while seated, and that if there was no customer in the store, she was either to be straightening the store or at the sample cart, attempting to draw in customers.[16] She also conceded that neither of these latter tasks could be performed while seated.[17] Singletary's testimony therefore establishes that there was no time during Singletary's shift in which she could have been performing her required duties while sitting. Put another way, Singletary concedes that she was

---

[14] *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[15] Singletary concedes in her opposition that many aspects of her job required standing, such that "the court can dispense with the analysis of Section 14(A) of the wage order." Docket No. 33 at 2.

[16] *See* Docket No. 30-2 at 121:5-17.

[17] *See id.* at 129:14-18.

always engaged in the active duties of her job, and there was no down time that would have allowed her to use a seat. No reasonable jury could review this evidence and conclude that she could have used any seats provided in a way that "[did] not interfere with the performance of [her] duties."[18] Teavana's motion for summary judgment as to Singletary's seating claim is granted.

### B. Singletary Failed to Exhaust Her Administrative Remedies, Which Precludes Her Private Attorney General Act Claim

California's PAGA statute creates a mechanism by which an "aggrieved employee" can bring a civil action against an employer for any violation "that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency."[19] In order to bring such an action, however, the employee must first exhaust the administrative remedies available to her by providing written notice of "the specific provisions of this code alleged to have been violated, including the facts and theories to support the alleged violation" to both the employer and the LWDA; a lawsuit may commence thirty-three calendar days after the notice is sent if the LWDA fails to provide a response or notifies the employee that it will not be taking further action.[20]

Teavana argues that here, Singletary's failure to exhaust her mandatory administrative remedies before bringing suit bars her PAGA claim. Again, the parties agree on the basic facts at issue. On December 5, 2012, Singletary sent a letter to Teavana explaining her complaints regarding rest periods and her final pay; she sent a notice to the Labor Workforce Development Agency about these violations on the same day. The text of that letter uncontestedly described the violations as follows: "1. Failure to provide Ms. Singletary and other aggrieved employees compliant rest periods. (Violation of Labor Code § 226.7 (a)); and 2. Failure to timely pay Ms.

---

[18] IWC Wage Order 7-2001, Section 14(b).

[19] Cal. Lab. Code § 2699.

[20] *See* Cal. Lab. Code § 2699.3.

5
Case No. 5:13-cv-01163-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Singletary and other aggrieved employees all wages owed at the time of termination/resignation. (Violation of Labor Code §§ 201-203)."[21]  On December 12, 2012, Singletary sent another letter to both Teavana and the LWDA explaining her further complaints regarding seating, describing the complaint as simply "[f]ailure to provide Ms. Singletary and other aggrieved employees suitable seating.  (Violation of Labor Code § 1198 and IWC Wage Order 7-2001, § 14)."[22]  The only issue for the court is whether these notices included "the facts and theories to support the alleged violations," such that they were sufficient to exhaust the administrative requirements.

They did not.  Although Singletary argues that "common sense dictates that it should not make any difference to LWDA whether the rest period was not given due to one reason over another," "it makes little sense to require an aggrieved employee to provide detailed facts and theories about why she was not given a suitable seat at her job," and providing LWDA with notice "is essentially an exercise in futility,"[23] the Ninth Circuit has held that where "neither letter contains any factual allegations whatsoever, they cannot constitute adequate notice for purposes of PAGA."[24]  Other courts applying this precedent have similarly held that adequate notice requires at least some factual allegation to bolster the claim.[25]  Here, the letters clearly failed to provide "any factual allegations whatsoever," so under Ninth Circuit law, they do not provide adequate notice.[26]  Teavana's motion for summary judgment is granted on this claim.

---

[21] Docket No. 30-4.

[22] Docket No. 30-5.

[23] Docket No. 33 at 6.

[24] *Archila v. KFC U.S. Properties, Inc.*, 420 F. App'x 667, 669 (9th Cir. 2011).

[25] *See Alcantar v. Hobart Serv.,* Case No. 11-cv-1600 PSG, 2013 WL 228501, at *3-4 (C.D. Cal. Jan. 22, 2013); *Wong v. AT & T Mobility Servs. LLC,* Case No. 10-cv-8869-GW-FMOX, 2012 WL 8527485, at *2 (C.D. Cal. July 2, 2012); *Soto v. Castlerock Farming & Transp. Inc.*, Case No. CIV-F-09-0701 AWI, 2012 WL 1292519, at *8 (E.D. Cal. Apr. 16, 2012).

[26] *See also Ovieda v. Sodexo Operations, LLC,* Case No. 12-cv-1750-GHK (SSx), 2013 WL 3887873, at *3-5 (C.D. Cal. July 3, 2013); *Silva v. U.S. Bancorp*, Case No. 5:10-cv-01854-JHN-PJWx, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011).

6
Case No. 5:13-cv-01163-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**C.   Section 203 Does Not Provide Penalties for Failure to Pay Rest Break Premiums**

Singletary seeks to recover "waiting time penalties" under Labor Code Section 203 for Teavana's failure to pay her the "premium wages" she was owed under Labor Code Section 226.7. Section 226.7 provides that "[a]n employer shall not require an employee to work during a meal or rest or recovery period," and "[i]f an employer fails to provide an employee a meal or rest or recovery period . . . the employer shall pay the employee one additional hour of pay" for each day that a rest or meal period was not provided.[27] Section 203 authorizes additional penalties where "an employer willfully fails to pay without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits."[28] Although the plain language of the statute would appear to limit it to violations of the provisions listed, courts have long held that its penalties may be triggered by the withholding of other "wages."[29] The question before this court is whether the missed-rest-break payments required by Section 226.7 qualify as "wages," such that Teavana should be subject to penalties under Section 203 for its failure to make those payments at the time Singletary's employment was terminated.

The case law on this question is murky at best. In *Murphy v. Kenneth Cole Prods., Inc.*,[30] the California Supreme Court held that the "compensatory purpose of the remedy" under Section 226.7 makes it clear that "the 'additional hour of pay' is a premium wage'" for statute of limitation purposes. However, five years later, in *Kirby v. Immoos Fire Prot., Inc.*,[31] the Court held that "a

---

[27] Cal. Lab. Code § 226.7.

[28] Cal. Lab. Code § 203.

[29] *See, e.g., Hoover v. Am. Income Life Ins. Co.,* 206 Cal. App. 4th 1193, 1208 (2012) (finding that Section 203 may be triggered by failure to pay accrued bonuses); *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1019 (N.D. Cal. 2010) (finding that Section 203 may be triggered by failure to pay out unused vacation time).

[30] 40 Cal. 4th 1094, 1114 (2007).

[31] 53 Cal. 4th 1244, 1255 (2012).

section 226.7 claim is not an action brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks." Unsurprisingly, in light of these divergent holdings, other courts looking at this question in other contexts have split on the appropriate characterization of Section 226.7 payments.[32]

The *Kirby* court, however, believed that its holding was "not at odds with [the] decision in *Murphy.*"[33] There are two distinct facets of every legal action: a violation of a law (the wrong) and the consequence that society imposes on the party who committed the violation (the remedy).[34] The *Kirby* court believed that the *Murphy* court was concerned with the nature of the remedy created by Section 226.7.[35] This deduction resonates with the United States Supreme Court's conclusion that, "statutes of limitations affect the remedy only."[36] In contrast, the fee award statute at issue in *Kirby* turned on the characterization of the wrong giving rise to that remedy under Section 226.7, rather than on the remedy itself. Attorney's fee provisions exist to incentivize private enforcement of certain rights, and are thus concerned with the substantive wrong at issue in a given type of case.[37] Because "the legal violation [triggering a Section 226.7 claim] is nonprovision of meal or rest breaks," rather than nonpayment of wages, the Court found that the

---

[32] *See Bellinghausen v. Tractor Supply Co.,* Case No. 3:13-cv-02377-JSC, 2014 WL 465907, at *6-9 (N.D. Cal. Feb. 3, 2014) (contrasting *Jones v. Spherion Staffing LLC*, Case No. 11-cv-06462-JAK-JCx, 2012 WL 3264081, at *8-9 (C.D. Cal. Aug. 7, 2012) with *Avilez v. Pinkerton Gov't Servs.*, 286 F.R.D. 450, 464-65 (C.D. Cal.2012)); *see also Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 684 (2014); *Aleman v. AirTouch Cellular*, 209 Cal. App. 4th 556, 58 (2012).

[33] 53 Cal. 4th at 1257.

[34] *See Booth v. Churner*, 532 U.S. 731, 738 (2001).

[35] *See Kirby,* 53 Cal. 4th at 1257 (reasoning that "the 'additional hour of pay' remedy in Section 226.7 is a 'liability' and that the liability is properly characterized as a wage, not a penalty.") (emphasis added).

[36] *Campbell v. City of Haverhill*, 155 U.S. 610, 618 (1895).

[37] *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1066 (9th Cir. 2004); *Flannery v. Prentice*, 26 Cal. 4th 572, 592 (2001).

attorney fee provision did not apply.[38]  In short, *Murphy* teaches that the monetary remedy created by Section 226.7 is a wage, while *Kirby* clarifies that the wrong giving rise to that remedy does not stem from a wage violation.

Section 203, like the attorney fee provision in *Kirby*, is concerned with a particular type of wrong, not a particular type of remedy.  The first clause of the section clarifies that its penalties only attach "if an employer willfully fails to pay any wages of an employee."[39]  This clause demonstrates that the wrong Section 203 is concerned with is the prompt payment of wages to a terminated employee.  *Kirby* clarified that the wrong at issue in Section 226.7 is the non-provision of rest breaks, not a denial of wages.  As such, this case falls under *Kirby*'s characterization of Section 226.7's payment as penalties, not wages, governs here.  Teavana's motion for summary judgment on the Section 203 claim is granted.

## IV.   CONCLUSION

Teavana's motion for summary judgment on Singletary's claims under Section 14 of IWC's Wage Order 7-2001, the PAGA, and Labor Code Section 203 is GRANTED.  Because Singletary does not oppose the motion for summary judgment on her prayer for injunctive relief and her UCL claim, to the extent that it is based on her seating and waiting time claims, the motion also is GRANTED as to those claims.

**IT IS SO ORDERED.**

Dated: May 2, 2014

*Paul S. Grewal*
PAUL S. GREWAL
United States Magistrate Judge

---

[38] *Id.*

[39] Cal. Lab. Code § 203.

9
Case No. 5:13-cv-01163-PSG
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT